# Syllabus

Chief Justice:
  Bridget M. McCormack

Chief Justice Pro Tem:
  David F. Viviano

Justices:
 Stephen J. Markman
 Brian K. Zahra
 Richard H. Bernstein
 Elizabeth T. Clement
 Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
 Kathryn L. Loomis

PEOPLE v BROWN

Docket No. 158663.  Decided December 3, 2020.

Troy A. Brown was convicted by a jury in the Macomb Circuit Court of one count of first-degree criminal sexual conduct, MCL 750.520b(1)(a).  According to the victim, defendant threatened her with a belt and then forced her legs open and penetrated her.  The victim disclosed the assault to her brother the next day.  Defendant agreed to come to the police station for an interview and voluntarily spoke to the police for approximately three hours.  The entirety of defendant's interview with two detectives was videorecorded; however, the video was not admitted at trial.  Instead, the detectives testified as to what transpired during the interview.  At trial, one detective testified that defendant said that the truth was "probably somewhere in the middle" of the victim's story and defendant's story.  Defense counsel cross-examined the detective about whether the detective—not defendant—was actually the one who asked defendant in the interview whether the truth was somewhere in the middle.  Defense counsel asked whether the video should be shown, but the prosecutor objected, and the trial court sustained the objection.  When defense counsel continued to question the detective, the prosecutor reinforced his position on redirect examination instead of conceding that the detective's earlier testimony was incorrect.  During closing arguments, defense counsel again argued to the jury that the detective's testimony was incorrect, but the prosecutor objected, and the court sustained the objection.  Following a five-day jury trial, defendant was convicted and sentenced to the statutory mandatory minimum of 25 years in prison, MCL 750.520b(2)(b), and to a maximum of 60 years in prison.  Defendant appealed.  In an unpublished order entered on June 28, 2017 (Docket No. 336058), the Court of Appeals, SAAD, P.J., and SERVITTO and GLEICHER, JJ., granted a stipulated request to expand the record to include the videorecording of the police interview.  The video revealed that the detective, in fact, had been the one to ask defendant if the truth was somewhere in the middle.  The video further showed that defendant, in response to the detective's questioning, did not move or make any gesture whatsoever.  In an unpublished order entered on July 25, 2017, the Court of Appeals, SERVITTO, P.J., and JANSEN and SAAD, JJ., granted defendant's motion to remand for an evidentiary hearing.  On remand, the trial court conducted a hearing and heard testimony from defense counsel.  In an opinion and order, the trial court denied defendant's request for a new trial.  Defendant appealed, and in an unpublished per curiam opinion issued on October 18, 2018, the Court of Appeals, O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ., affirmed.  Defendant sought leave to appeal in the Supreme Court.

In a unanimous per curiam opinion, the Supreme Court, in lieu of granting leave to appeal and without hearing oral argument, *held*:

A prosecutor may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, and a prosecutor has an affirmative duty to correct patently false testimony, especially when that testimony conveys to the jury an asserted confession from the defendant. In this case, the detective testified that defendant said that the truth between the victim's allegations and defendant's claims of innocence was actually "somewhere in the middle." This claimed confession, however, was false, as evidenced by the videorecording of the interview. Therefore, the prosecutor elicited false testimony from the detective on direct examination. The prosecutor then allowed this false testimony to stand uncorrected. At most, the prosecutor's direct examination and defense counsel's cross-examination left for the jury the task of determining the detective's credibility regarding the claimed confession. And even if defense counsel's questioning worked to correct the detective's inaccurate statements, the prosecutor failed in his duty to correct false testimony by subsequently attempting on redirect examination to restore the detective's credibility regarding his initial statements. Furthermore, the attorneys' closing arguments did not correct or alleviate the harm done by the detective's testimony. Accordingly, the prosecutor's conduct failed to comport with due process. Defendant was entitled to a new trial because there was a reasonable probability that the prosecution's exploitation of the false testimony affected the verdict. The trial presented a credibility contest between defendant and the victim. The prosecutor not only failed to correct the false testimony, which essentially claimed that defendant confessed to the crime, but the prosecutor undertook affirmative actions to cloud defense counsel's efforts to correct the record. Accordingly, defendant was entitled to a new trial.

Court of Appeals judgment reversed; defendant's conviction vacated; and case remanded for a new trial.

©2020 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED December 3, 2020

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 158663

TROY ANTONIO BROWN,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue is whether defendant, Troy Antonio Brown, is entitled to a new trial because the detective who conducted defendant's police interview testified falsely against him. We conclude that (1) the detective's testimony against defendant was false, (2) the prosecutor failed to correct the false testimony, and (3) there is a reasonable likelihood that the uncorrected false testimony affected the judgment of the jury. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). Therefore, we reverse the judgment of the Court of Appeals, vacate defendant's conviction, and remand to the trial court for a new trial.

# I.  FACTS AND HISTORY

Defendant lived across the street from the victim's babysitter.  On April 27, 2015, the 11-year-old victim was at defendant's home playing with his two children and the babysitter's children.  According to the victim, defendant told her to go to his bedroom, and he locked the other children in a playroom.  In the bedroom, he threatened to "whoop" the victim with a belt, and then he forced her legs open and penetrated her vagina with his penis.  Afterward, defendant told her not to say anything and gave her a dollar.  The victim then went back to her babysitter's house.  She disclosed the assault to her adult brother the next day.

Defendant agreed to come to the police station for an interview and voluntarily spoke to the police for approximately three hours.  Detective-Sergeant Robert Eidt was one of two detectives who participated in defendant's interview, the entirety of which was videorecorded.  At trial, the video was not admitted.  Instead, the detectives testified as to what transpired during the interview.  The prosecutor concluded his direct examination of Eidt by asking about Eidt's questioning of defendant:

> *Q.*  At some point did you confront the Defendant with the fact that [the victim] was staying [sic] one thing and [that defendant's] story didn't match up?
>
> *A.*  Yes, I did.
>
> *Q.*  All right.  And what was [defendant's] response?
>
> *A.*  He said that it was probably somewhere in the middle.
>
> *Q.*  That what was probably somewhere in the middle?
>
> *A.*  The truth.

A short time later during the direct examination, the prosecutor repeated this point to conclude his questioning of Eidt:

> *Q.* So Sergeant, you had indicated that the Defendant said that the truth was probably somewhere in the middle?
>
> *A.* Yes.

Following the prosecutor's direct examination of Eidt, defense counsel asked for and was granted a recess to review the videorecorded interview before beginning his cross-examination. Defense counsel then cross-examined Eidt about whether *he* was actually the one who asked defendant whether the truth was somewhere in the middle:

> *Q.* I asked for a recess to go back to this and watch it, to make sure my notes were accurate. If I told you the DVD says that you said the truth's somewhere in the middle and [defendant] never said that word, would you have any reason to dispute that?
>
> *A.* As I said before, the report I did not author and this did happen a year and a half ago and I reviewed the report and that's what the report says.

Defense counsel then asked, "Do we need to show this part of the video?" But the prosecutor objected on the ground that the question was argumentative, and the trial court sustained the objection. Defense counsel then continued his cross-examination of Eidt:

> *Q.* Do you, do you disagree with my position that the video shows you saying the truth is somewhere in the middle and not [defendant], at 6:49:50, it's not him but you that says that?
>
> *A.* It's possible.
>
> *Q.* So your testimony earlier could be incorrect?
>
> *A.* About that, yes.

Instead of conceding the point, the prosecutor reinforced his position on redirect examination, asking Eidt if one of *defendant's* responses during the interview was "that the

truth is somewhere in the middle[.]" Defense counsel objected before Eidt could answer, and defense counsel again said, "[I]f we want to show the video I gladly will." But the prosecutor responded that "we can rely on the previous testimony and the report," and the trial court agreed.

Closing arguments were held the next day. When defense counsel argued to the jury that he had asked for the recess to make sure that his review of the DVD was correct, that his notes were accurate, and that Eidt lied, the prosecutor objected on the ground that this was "Counsel's testimony of what he saw" on the DVD and that "this is facts not in evidence," and the trial court sustained the objection. And while the prosecutor did not specifically mention the "truth is in the middle" statement in his closing argument, he did argue during rebuttal:

> Counsel suggested that I'm hiding something from you by not showing you the three-hour video. Do you really think you need to watch three hours of that kind of manipulation? You don't, because you have him here in the flesh. That's even better, and you can judge for yourselves whether or not he's lying.

Following the five-day jury trial, defendant was convicted as charged on one count of first-degree criminal sexual conduct, MCL 750.520b(1)(a). He was sentenced to the statutory mandatory minimum of 25 years in prison, MCL 750.520b(2)(b), and a maximum sentence of 60 years. On appeal, the Court of Appeals granted a stipulated request to expand the record to include the videorecording of the police interview. *People v Brown*, unpublished order of the Court of Appeals, entered June 28, 2017 (Docket No. 336058). The video revealed that Eidt, in fact, had been the one to ask defendant if the truth was somewhere in the middle. And the video further showed that defendant, in response to

4

Eidt's questioning, did not move or make any gesture whatsoever. The Court of Appeals granted defendant's motion to remand for an evidentiary hearing. *People v Brown*, unpublished order of the Court of Appeals, entered July 25, 2017 (Docket No. 336058). On remand, the trial court conducted a hearing and heard testimony from trial defense counsel. In an opinion and order, the trial court denied defendant's request for a new trial. Defendant appealed, and the Court of Appeals affirmed. *People v Brown*, unpublished per curiam opinion of the Court of Appeals, issued October 18, 2018 (Docket No. 336058). We are now tasked with determining whether the detective's testimony, in conjunction with the prosecutor's actions, violated defendant's constitutional right to due process.

## II. LEGAL PRINCIPLES

A due-process violation presents a constitutional question that this Court reviews de novo. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010). A prosecutor's use of false testimony is inconsistent with due process. *Smith*, 498 Mich at 475. In other words, "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ." *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959).[1] Importantly, a prosecutor "has an *affirmative duty* to correct" patently false testimony, *Smith*, 498 Mich at 476 (emphasis added), especially when that testimony conveys to the jury an asserted confession from the defendant. See *People v Tanner*, 496 Mich 199, 254; 853 NW2d 653 (2014) ("[C]onfessions and incriminating statements constitute perhaps the most compelling and important evidence available to fact-finders in

---

[1] Although Justice ZAHRA dissented in *Smith*, he expressed "agree[ment] with this fundamental proposition, and imagine[d] that no one denies it." *Smith*, 498 Mich at 494-495 (ZAHRA, J., dissenting).

5

the justice system's search for truth."). And while "not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony, it is the *effect* of a prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes." *Smith*, 498 Mich at 476 (quotation marks and citations omitted). A prosecutor's referencing, or taking advantage of, false testimony is of paramount concern because it "reinforce[s] the deception of the use of false testimony and thereby contribute[s] to the deprivation of due process." *Id*. (quotation marks and citation omitted; alterations by the *Smith* Court). "A new trial is required if the uncorrected false testimony 'could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Id*., quoting *Napue*, 360 US at 271-272.

### III. ANALYSIS

At trial, Eidt testified that defendant said that the truth between the victim's allegations and defendant's claims of innocence was actually "somewhere in the middle." In essence, Eidt told the jury that defendant at most confessed to committing first-degree criminal sexual conduct or at a minimum admitted that he engaged in sexual activity with the victim. This claimed confession, however, was false, as evidenced by the videorecording of the interview. During the interview, Eidt actually asked defendant if the truth was "somewhere in the middle," but defendant gave no indication—verbally or nonverbally—in response to this questioning.[2] Therefore, the prosecutor elicited false testimony from the detective on direct examination.

---

[2] The Court of Appeals explained, "[I]t is apparent that defendant made a non-verbal response to the challenged statement about the truth being somewhere in the middle, nodding his head in a discernable affirmative reply." *Brown*, unpub op at 5. As a result,

Our inquiry then turns to whether the prosecutor allowed this false testimony to stand uncorrected. Both the trial court and the Court of Appeals held that defense counsel sufficiently impeached Eidt on this point and thus that there was no need for the prosecutor to correct the record. Certainly, after the prosecutor elicited Eidt's response during direct examination, defense counsel attempted to set the record straight. Defense counsel requested a recess and then questioned Eidt about what was actually said during the interview. In response to defense counsel's questioning, Eidt initially continued to testify that defendant made the inculpatory statement as was recounted in the police report, but in response to Eidt's comments, defense counsel asked if the video of the interview should be played for the jury. The prosecutor objected to this questioning, and the trial court sustained the objection. When defense counsel continued his examination, he again asked if it was the detective, and not defendant, who made the inculpatory statement. Importantly, the detective never admitted that he was mistaken. Rather, he simply stated that it was "possible" he was wrong and agreed that his testimony "could be incorrect."

the Court held that "even if that particular portion of the video would have been shown to the jury to correct Sergeant Eidt's testimony . . . , the jury would have learned that although defendant did not orally state that the truth was somewhere in the middle, he did indeed nod in assent when it was said." *Id*. We have reviewed the videorecorded interview, and the Court's assertions are in error. At one point in the interview, Detective James Twardesky asked a similar question that "somewhere in the middle is probably the truth, right like any other story?" Defendant made a slight nod to this question but seconds later said, "I told you I didn't touch her." Indeed, defendant nodded in response to many of the detectives' questions but denied the criminal allegations over 20 times throughout the three-hour interview. But even if this one nod constituted evidence that defendant agreed with Twardesky's assertion, Eidt's testimony nonetheless remained inaccurate and misleading because Eidt indicated at trial that while he was questioning defendant, defendant made the incriminating statement, not that defendant simply nodded his head in response to another detective's questioning.

7

We cannot conclude, as the trial court and Court of Appeals did, that this questioning sufficiently corrected the record. At most, the prosecutor's direct examination and defense counsel's cross-examination left for the jury the task of determining Eidt's credibility regarding the claimed confession.

Even if defense counsel's questioning worked to correct Eidt's inaccurate statements, the prosecutor failed in his duty to correct false testimony by subsequently attempting on redirect examination to restore Eidt's credibility regarding his initial statements. Despite being aware that there might be video evidence to the contrary, the prosecutor asked Eidt, "And to summarize some of the responses that you got from [defendant] is that . . . the truth is somewhere in the middle?" Defense counsel objected and argued that the prosecutor was mischaracterizing Eidt's testimony and that Eidt actually admitted that "he does not remember" whether defendant confessed.[3] Instead of correcting the record and having Eidt concede that defendant never made any such admission, the prosecutor said, "Your Honor, we can rely on the previous testimony and the [police] report." Eidt's testimony on direct and cross-examination was contradictory, and the police report was patently false.[4] Thus, the redirect examination did nothing to

---

[3] Defense counsel's characterization of Eidt's testimony, i.e., that Eidt simply "[did] not remember" what defendant said during the interview, further indicates that Eidt did not unequivocally admit that he, rather than defendant, made the inculpatory statement.

[4] According to the police report, defendant told Eidt during the interview that "the truth was probably in the middle." The police report was not admitted at trial, but Eidt testified that this is what the report indicated. Thus, even though Eidt correctly relayed the information in the police report, the report itself was factually inaccurate, and the prosecutor failed to adhere to his duty to correct the record when he told the court and the jury that they could "rely on . . . the report."

8

correct the record and, indeed, further suggested that the prosecutor believed that Eidt initially told the truth and that defendant made the admission during the interview.[5] Here, the prosecutor's failure to correct the testimony and instead rely on that testimony in questioning is especially problematic because it "reinforce[d] the deception of the use of false testimony and thereby contribute[d] to the deprivation of due process." *Smith*, 498 Mich at 476 (quotation marks and citation omitted).

We further find that the attorneys' closing arguments did not correct or alleviate the harm done by Eidt's testimony. Defense counsel attempted to highlight to the jury that defendant made no such admission. However, the prosecutor again objected, arguing that those facts were "not in evidence." The trial court sustained the objection, further underscoring the prosecutor's attempt to obscure the truth about the claimed confession. And, finally, the prosecutor during rebuttal argued to the jury that he was not trying to hide anything by keeping the actual video from them. This argument at worst misled the jury

---

[5] It is clear that the prosecutor has a duty to apprise the court when he or she knows the witness is giving false testimony. See *Smith*, 498 Mich at 477 ("Regardless of the lack of intent to lie on the part of the witness, *Giglio* [*v United States*, 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972)] and *Napue* require that the prosecutor apprise the court when he *knows* that his witness is giving testimony that is substantially misleading.") (quotation marks and citation omitted; emphasis added). But, contrary to the prosecutor's contention on appeal, the prosecutor also has such a duty when it should be obvious that the witness is giving false testimony. " '[W]hen it should be obvious to the Government that the witness' answer, although made in good faith, is untrue, the Government's obligation to correct that statement is as compelling as it is in a situation where the Government knows that the witness is intentionally committing perjury.' " *Smith*, 498 Mich at 477, quoting *United States v Harris*, 498 F2d 1164, 1169 (CA 3, 1974). This is not a case of "inconsistencies" among witnesses, as the prosecutor now suggests. Rather, it should have been obvious to the trial prosecutor that Eidt's testimony was false at least by the time defense counsel requested a recess, sought to correct the record (over the prosecutor's objections), and asked if the taped interview should be played for the jury.

9

to believe that defendant admitted his guilt or at best muddied the record so that the jury would have to assess on its own whether Eidt was telling the truth regarding the admission. We are unable to conclude that the prosecutor adhered to his duty to correct the record; instead, he left intact the false statements that Eidt made. Accordingly, we hold that Eidt's testimony was false; that the prosecutor's actions did not correct the false testimony; and that as a result, the prosecutor's conduct failed to comport with due process. *Smith*, 498 Mich at 482.

We must determine whether the prosecutor's use of the false testimony merits relief. A defendant is entitled to a new trial when "there is a reasonable probability that the prosecution's exploitation of the substantially misleading testimony affected the verdict." *Id*. at 470, citing *Napue*, 360 US at 271-272. As with many sexual-assault cases, the trial presented a credibility contest between defendant and the victim. There was no DNA evidence, no physical injury to the victim, and no eyewitness testimony that supported the prosecutor's assertion that defendant sexually assaulted the victim. Rather, the prosecutor's case rested largely on the victim's testimony. Throughout the trial, defense counsel fleshed out inconsistencies in the victim's allegations, including (1) whether the assault occurred on the bed or on the floor, (2) whether the victim cleaned herself up before or after the assault, (3) whether the victim kept her underwear on or took them off, and (4) whether the victim was quiet and did not fight back during the assault or whether she screamed and attempted to forestall defendant's advances. Additionally, defense counsel argued that the victim had a proclivity for stealing and lying, highlighting the fact that she stole a candy bar the day of the assault.

10

Conversely, the prosecutor effectively attacked defendant's credibility by admitting portions of a jail-call video wherein defendant made comments to his fiancée that he "fucked up," that he could not say anything or else he would get "locked up," and that "she came on to me and I fell right into the trap." Additionally, the officers testified that defendant at one point in the interview said, "It never got that far," rather than simply and repeatedly denying the allegations. The prosecutor also emphasized throughout the trial that defendant's bedding was in the washer when the police searched his home, indicating that defendant may have been trying to cover up the evidence. And finally, the prosecutor introduced defendant's prior conviction of assault with a dangerous weapon in order to rebut defendant's claim that he had not been convicted of prior assaultive crimes.

Yet, both sides had viable defenses of each aspect of their questioning. The prosecutor argued that although defense counsel highlighted inconsistencies in aspects of the victim's allegations, the victim's main assertion—that defendant sexually assaulted her—never wavered. Moreover, the prosecutor pointed to consistencies regarding the victim's allegations, such as that she gave the dollar she received from defendant to her brother and that officers found the belt with which defendant allegedly threatened her on defendant's dresser. On the other hand, defendant and his fiancée testified that during their jail call they were not referring to the allegations against defendant but about his recent affair with another woman. His fiancée also explained that she washed the bedding because one of the children urinated on it. As for defendant's prior conviction, he clarified that he had not been convicted of any other crime involving *sexual* assault, not assault in general.

These illustrations reinforce that the trial was essentially a credibility contest in which both sides either bolstered or attacked the trustworthiness of defendant and the

11

victim. When credibility is a dominant consideration in ascertaining guilt or innocence, other independent evidence apart from the testimony of the defendant and the victim is particularly vital to the fact-finding process. And false testimony simply undermines the jury's ability to discern the truth in these circumstances. This is not to say that false testimony always gives rise to a violation of due process meriting a new trial. In some cases, a new trial will not be warranted given the sheer strength of the truthful evidence relative to the false testimony. "[N]ot every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony . . . ." *Smith*, 498 Mich at 476 (quotation marks and citation omitted). However, "confessions and incriminating statements constitute perhaps the most compelling and important evidence available to fact-finders in the justice system's search for truth." *Tanner*, 496 Mich at 254. And when an alleged confession is introduced into a trial, even if the reliability of the confession is in question, there is a greater likelihood that this testimony, when false, will destructively affect the judgment of the jury. As we explained in *Smith*, a new trial is warranted when there is a reasonable probability that the prosecutor's exploitation of the false testimony affected the verdict. *Smith*, 498 Mich at 470. Once again, the prosecutor here not only failed to correct Eidt's testimony, which essentially claimed that defendant confessed to the crime, but the prosecutor undertook affirmative actions to cloud defense counsel's efforts to correct the record. A prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones," and "[i]t is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). We recognize that the prosecutor may not have relied heavily on this false

testimony throughout the trial, but his actions nonetheless left it to the jury to decide if defendant made self-incriminatory statements during the interview. Leaving this kind of false testimony for the jury to assess on its own is highly prejudicial in the present circumstances, and we conclude that there is a reasonable likelihood that it affected the jury's verdict, one ultimately resting on the credibility of the victim and defendant. We therefore reverse the judgment of the Court of Appeals, vacate defendant's conviction, and remand for a new trial.[6]

> Bridget M. McCormack
> Stephen J. Markman
> Brian K. Zahra
> David F. Viviano
> Richard H. Bernstein
> Elizabeth T. Clement
> Megan K. Cavanagh

---

[6] Given our holding, we do not address defendant's remaining claims, including that the CARE House interviewer's testimony and the prosecutor's comments violated the legal principles set forth in *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995). See also *People v Thorpe*, 504 Mich 230; 934 NW2d 693 (2019). However, we urge the prosecutor on retrial to ensure that any testimony, and any arguments relying on that testimony, fully comports with the standards set forth in *Peterson* and *Thorpe*.